**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

IVAN LEE MATTHEWS, II,

Plaintiff,

v.

WILLIAM REUBART,

Defendant.

Case No. 3:19-CV-0221-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 12]

This case involves a civil rights action filed by Plaintiff Ivan Lee Matthews, II ("Matthews") against Defendant William Reubart ("Reubart"). Currently pending before the Court is Reubart's motion for summary judgment. (ECF No. 12.)[2] Matthews opposed the motion, (ECF No. 20), and no reply was filed. For the reasons stated below, the Court recommends that Reubart's motion for summary judgment, (ECF No. 12), be granted.

I.  **PROCEDURAL HISTORY**

At the time this matter was initiated in April 2019, Matthews was an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and the events that gave rise to this action occurred at the Ely State Prison ("ESP"). (ECF No. 1-1.) Matthews submitted an amended civil rights complaint pursuant to 42 U.S.C. § 1983. (*Id.*)[3] On March 30, 2020, the Court screened the amended complaint and dismissed it with leave to amend. (ECF No. 3.) Matthews then filed his second amended complaint ("SAC"). (ECF No. 5.) In his SAC, Matthews sued Reubart for one claim of Eighth Amendment deliberate

---

[1]  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]  Reubart also filed exhibits under seal, (ECF No. 14), and an erratum with declarations authenticating the exhibits. (ECF No. 17.)

[3]  The initial complaint was labeled as "amended complaint," even though Matthews had not filed any other complaints in this case. (*See* ECF Nos. 1-1, 3.)

1 | indifference to serious medical needs and sought monetary relief. (*Id.* at 1-2, 4, 10.)

2 |     The SAC alleged on April 4, 2018, August 10, 2018, and approximately December

3 | 20, 2018, Matthews was improperly assigned a top bunk although he informed staff at

4 | ESP that he had a seizure disorder and required a lower bunk. (*Id.* at 4.) On December

5 | 8, 2020, the Court screened the SAC. (ECF No. 6.) Based on the allegations, the Court

6 | allowed Matthews to proceed as to the portion of Count One alleging Eighth Amendment

7 | unsafe prison conditions against Reubart. (*Id.*)

8 |     On June 10, 2021, Reubart filed the instant motion for summary judgment. (ECF

9 | No. 12.) Reubart asserts he is entitled to summary judgment because: (1) he did not

10 | personally participate in the alleged violation; (2) there is insufficient evidence to sustain

11 | a claim of deliberate indifference against him; and (3) alternatively, he is entitled to

12 | qualified immunity. (*Id.*) Matthews opposed the motion, (ECF No. 20), and no reply was

13 | filed.

14 | **II.    FACTS[4]**

15 |     On April 4, 2018, Matthews was transferred from the Southern Desert Correctional

16 | Center to ESP. (ECF Nos. 12-1 at 1 (bed assignments); ECF No. 12-5 at 2 (explaining

17 | bed assignments.)) Upon his arrival, Matthews was assigned to a cell in Unit 7, Block B,

18 | cell number 32, on the top bunk. (*Id.*) There is no information in the record regarding who

19 | initially assigned Matthews to this cell and bunk upon his arrival at ESP.

20 |     On April 13, 2018, Matthews submitted a "medical kite," informing medical

21 | personnel that he needed to be placed on a lower bunk due to a seizure disorder. (ECF

22 | No. 12-2 at 1.) The following day, Matthews was seen by Nurse Christopher Rice. (ECF

23 | No. 14-1 at 2-3.) At that time, Matthews informed Nurse Rice of his seizure disorder and

24 | need for a lower bunk. (*Id.*) Nurse Rice's notes indicate that the first-time medical staff

25 | became aware of Matthews's seizure disorder and need for a lower bunk occurred on

[4]    The facts as stated herein are taken from the authenticated evidence submitted by Reubart in support of the motion for summary judgment. Matthews did not submit any evidence or documents in support of his opposition.

2

1   April 13, 2018 when Matthews submitted the medical kite several days after arriving at

2   ESP. (*Id.*)[5] On April 18, 2018, Nurse "Jones" responded to Matthews's kite stating that he

3   had been "reclassified," meaning his request for a new cell and lower bunk was granted.

4   (ECF No. 12-2 at 2.) On the following day, Matthews was reassigned to Unit 7, Block B,

5   cell number 23, on the lower bunk. (ECF No. 12-1 at 2.)

6        On April 11, 2018, Matthews submitted an informal grievance asserting that he

7   was improperly assigned to a top bunk. (ECF No. 12-3 at 11-13.) In the informal

8   grievance, Matthews claimed he was screened for housing "by medical," who asked him

9   several questions about himself and his health when he arrived at ESP on April 4, 2018.

10  (*Id.*) Matthews claimed he expressly told this person—who is unidentified—he suffered

11  from a seizure disorder at that time. (*Id.*) Thereafter, Matthews asserted he also informed

12  "R&R" and Unit 7B officers of his condition. (*Id.* at 13.) Despite this, Matthews claimed he

13  was improperly assigned to a top bunk. (*Id.*) It appears grievance coordinator, Reubart,

14  signed for receipt of the informal grievance on April 16, 2018. However, based on the

15  other signatures on the informal grievance and the NOTIS documents provided, Reubart

16  did not personally respond to the grievance. Rather, the grievance was responded to by

17  a caseworker, who denied the grievance because Matthews had already been moved to

18  a lower bunk. (*Id.* at 10.)

19       Matthews then filed a "First Level Grievance," which it appears grievance

20  coordinator Reubart, also received on June 1, 2018. (*Id.* at 7.) "J. Carpenter"—not

21  Reubart—provided the response to the grievance on August 1, 2018. (*Id.* at 6-7.)

22  Carpenter affirmed the denial of Matthews's informal grievance. (*Id.*) Thereafter,

23  Matthews filed a "Second Level Grievance," which grievance coordinator, Reubart,

24  received on September 4, 2018. (*Id.* at 2.) Once again, however, Reubart did not respond

25  to the grievance. Rather, this grievance was responded to by Minev on January 29, 2019,

26  _____

27  [5]    Other medical kites sent by Matthews between his arrival at ESP on April 4, 2018,
    and the date of this medical kite corroborate this information. Specifically, Matthews sent
28  medical kites on April 7, 2018 and April 11, 2018. However, Matthews did not refer to, or
    even mention, his seizure disorder or bunk assignment in these kites. (ECF No. 12-2.)

who indicated the grievance had been resolved. (*Id.*)

Subsequently, Matthews was reassigned to an upper bunk on two additional occasions relevant to this case. First, Matthews was reassigned to a top bunk for one night on August 8, 2018, following a fight. (ECF No. 12-1 at 1; ECF No. 12-4 at 2.) Second, Matthews was assigned to a top bunk between December 4, 2018, to December 18, 2018, while he was housed in the infirmary. (ECF No. 12-3 at 3; ECF No. 12-5 at 3.) While in the infirmary, Matthews was under 24-hour observation. (ECF No. 12-5 at 3.) There is no evidence in the record indicating who was responsible for these reassignments, nor is there any record of any grievance or medical kite sent by Matthews taking issue with the subsequent upper bunk assignments.

In support of the motion for summary judgment, Reubart submitted a declaration. (ECF No. 12-5.) In this declaration, Reubart states that in his role as assistant warden, it was within his authority to reassign inmates to different cells on a case-by-case basis; however, he did not have primary authority for making the initial cell and bunk assignments for inmates arriving at ESP or for reassignments of each inmate at ESP. (*Id.* at 3.) Reubart also states he never personally responded to any grievance from Matthews related to his upper bunk assignment and he had no knowledge of Matthews's specific health conditions or medical history during the times relevant to the complaint. (*Id.*)

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at

248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary

materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

1    *of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

2    the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

3    Nevertheless, the court will view the cited records before it and will not mine the record

4    for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party

5    does not make nor provide support for a possible objection, the court will likewise not

6    consider it).

7    **IV.    DISCUSSION**

8        **A.    Personal Participation**

9        Reubart asserts he is entitled to summary judgment because there is no evidence

10   that he personally participated in assigning Matthews to his cell and bunk assignments,

11   that he responded to any of Matthews's grievances, or that he knew of Matthews's

12   medical condition. (ECF No. 12 at 6-7.) To support this argument, Reubart submitted

13   authenticated evidence related to Matthews's medical care, his cell and bunk

14   assignments, and his own declaration. (*See* ECF No. 12 (and attached exhibits); ECF No.

15   14 (and attached sealed exhibits); ECF No. 17, (authenticating affidavit for documents

16   attached to motion).)

17       In opposition, Matthews argues Reubart did respond to his grievances and, as the

18   associate warden, he was responsible for his overall health and safety. (ECF No. 20.)

19   Based on these assertions, Matthews argues there is sufficient evidence to establish that

20   Reubart personally participated in his cell and bunk assignments. Matthews did not

21   submit any evidence or exhibits to support these assertions, nor did he cite to any

22   evidence in the record.

23       "There are two elements to a section 1983 claim: (1) the conduct complained of

24   must have been under color of state law, and (2) the conduct must have subjected the

25   plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency*

26   *of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the

27   Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived

28   him of a right secured by the Constitution and the laws of the United States. *Gomez v.*

*Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Therefore, liability under § 1983 arises *only* upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (emphasis added). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.Ed. 2d 868 (2009).

A review of the evidence submitted and cited by Reubart supports his assertion that he did not personally participate in the events giving rise to this lawsuit. First, in his declaration, Reubart expressly states, under oath, that it was not his primary responsibility to make cell assignments or reassignments for ESP. (ECF No. 12-5 at 3.) Moreover, there does not appear to be any evidence in the record that suggests Reubart was involved in assigning Matthews to a top bunk when he arrived at ESP or subsequently reassigning him to an upper bunk. Thus, there is no evidence in the record to establish Reubart personally participated in the cell and bunk assignments for Matthews.

In addition, the evidence submitted by Reubart establishes that he did not respond to, or personally adjudicate, any grievance submitted by Matthews related to his cell and bunk assignments. A review of those documents reveals that these grievances were responded to by other individuals—not Reubart. (ECF No. 12-3.) In addition, Reubart's declaration confirms he did not personally respond to any of Matthews's grievances related to assignment to an upper bunk. (ECF No. 12-5 at 4.)

In addition to his declaration, Reubart submitted authenticated documents related to the medical kites and grievances submitted by Matthews related to these issues. (ECF Nos. 12-2, 12-3, 17.) In these documents, there is no mention or indication that Reubart was responsible for assigning Matthews to a specific cell or bunk upon his arrival at ESP

1    on April 4, 2018. Nor is there any evidence or indication in these records that Reubart

2    was responsible for assigning Matthews to a new cell or bunk thereafter. Finally, there is

3    no evidence in these records that Reubart personally responded to any of Matthews's

4    medical kites or grievances related to his cell and bunk assignment.

5          Rather, a review of these documents reveals that Matthews was assigned to a top

6    bunk upon arriving at ESP on April 4, 2018. Shortly thereafter, on April 13, 2018,

7    Matthews sent a medical kite requesting a reclassification of his bunk assignment. (ECF

8    No. 12-2 at 2.) Matthews was seen the following day by medical staff and his request for

9    a lower bunk was granted as confirmed by the response to his kite. (*Id.*, ECF Nos. 12-3,

10   14-1.) The documents also establish that Matthews filed an informal grievance related to

11   this issue on April 11, 2018, which was responded to by a caseworker. (ECF No. 12-3 at

12   10-11.) Thereafter, Matthews filed his first and second level grievances, which were

13   responded to by Carpenter and Minev, respectively. (ECF No. 12-3 at 2, 6.) Although it

14   appears that as grievance coordinator, Reubart, may have initially received these

15   grievances, there is no evidence that Reubart personally responded to these grievances.

16         As such, Reubart has met his burden on summary judgment to establish that he

17   did not personally participate in the alleged constitutional violation in this case. *See*

18   *Celotex Corp.*, 477 U.S. at 325. Therefore, the burden shifts to Matthews to come forward

19   with admissible evidence establishing that a material issue of fact exists as to his personal

20   participation. *Nissan*, 210 F.3d at 1102.

21         Matthews, however, failed to present or offer any evidence to the Court. Rather,

22   Matthews's Opposition is based solely upon his own statements—unsupported by

23   admissible evidence—that Reubart was involved in making his cell and bunk assignments

24   and in responding to his grievances. Based on the failure to come forward with admissible

25   evidence on this issue, Matthews has failed to meet his burden and Reubart is entitled to

26   summary judgment.

27   ///

28   ///

9

1

**B.     Grievances**

2       To the extent Reubart's role as grievance coordinator involved his receipt of

3   grievances filed by Matthews, this is also insufficient evidence to establish his personal

4   participation. The law is clear that one cannot state a constitutional claim based on their

5   dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144,

6   1157 (E.D. Wash. 2014). Where the defendant's only involvement in the allegedly

7   unconstitutional conduct is "the denial of administrative grievances or the failure to act,

8   the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d

9   295, 300 (6th Cir.1999)). However, the issue of whether responding to a grievance can

10  rise to the level of personal participation required for a § 1983 claim was addressed by

11  the Ninth Circuit in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other*

12  *grounds in Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff

13  had submitted several grievances about the denial of a recommended hip surgery; there

14  was testimony that the warden and associate warden were aware of the grievances, and

15  that they had reviewed an order stating that the inmate needed a hip replacement. *Snow*,

16  681 F.3d at 989. Defendants argued that there was no evidence in the record that they

17  were personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit,

18  however, said that their review of the grievance was sufficient to demonstrate that the

19  warden and associate warden were aware of the inmate's serious hip condition and failed

20  to act to prevent further harm so that the warden and associate warden were not entitled

21  to summary judgment based on lack of personal participation. *Id.*

22      Here, the only evidence that Reubart was involved in the grievance process at

23  issue in this case involved his role as grievance coordinator at ESP at the time Matthews

24  filed his grievances. However, a review of the authenticated documents submitted by

25  Reubart establishes he did not respond to the Matthews's grievances. Rather, these

26  documents show that Reubart did nothing more than *receive* the grievances when they

27  were filed. "Holding a prison official personally responsible for damages simply because

28  he is familiar with a prisoner's circumstances through direct communications with the

prisoner and through communications with his subordinates [or caseworkers] is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit." *May v. Williams*, No. 2:10-CV-576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v. Lash*, 687 F.2d 996, 1005-1006 (7th Cir. 1982); *see also Jackson, v. State of Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) ("[C]ourts have held that merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation."). Reubart's mere receipt of the grievances is not sufficient to establish that Reubart personally participated in this case.

### C.    Eighth Amendment – Deliberate Indifference to Prison Conditions

In the alternative, Reubart argues that even if the Court disagrees on the issue of personal participation, he is still entitled to summary judgment because there is no evidence to support Matthews's Eighth Amendment Claim. (ECF No. 12 at 7-9.) The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Inmates may challenge conditions of confinement that are exceptionally cruel. However, "[t]he Eighth Amendment is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable." *Hallett v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). In assessing inmates' claims, "courts must bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" *Rhodes v. Chapman*, 452, U.S. 337, 351 (1981) (quoting *Bell v. Wolfish*, 451 U.S. 520, 529 (1979)).

To challenge the conditions of confinement at a prison, a plaintiff must make two showings. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (internal citations omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 127 (2007). "First, the

plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Id.* This element may be satisfied by showing a deprivation of essential minimums, such as adequate food, clothing, shelter, or medical care. *Id.* Second, the plaintiff must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). The deliberate indifference element itself involves a two-part inquiry to determine whether the official acted "with a sufficiently culpable state of mind." *Johnson*, 217 F.3d at 731 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The official must have been aware of a substantial risk of harm to the inmate's health or safety, and also must not have had a "'reasonable' justification for the deprivation, in spite of that risk." *Thomas*, 611 F.3d at 1150. Accordingly, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

In his declaration, Reubart expressly states he did not have any personal knowledge of Matthews's seizure condition when he arrived at ESP or was assigned his cell and bunk. (ECF No. 12-5 at 4.) The authenticated evidence supports Reubart's statements. Based on the evidence submitted by Reubart, it appears that no one at ESP—including Reubart—was made aware of Matthews's seizure condition or his need for a lower bunk until April 13, 2018—several days after he arrived at ESP and was assigned a top bunk. (*See* ECF Nos. 3, 12-2.) As already noted above, there is no evidence Reubart was involved in making any of Matthew's cell and bunk assignments. As a result, there is no evidence that Reubart knew of Mathew's seizure condition, much less that he deliberately ignored that condition, resulting in a risk of harm to Matthews.

Therefore, Reubart has met his burden on summary judgment to establish that Matthews's Eighth Amendment claim fails as a matter of law because there is no evidence Reubart knew of Matthews's condition or that he deliberately ignored his condition placing him at risk of harm. *See Celotex Corp.*, 477 U.S. at 325. Therefore, the burden shifts to

1 Matthews to come forward with admissible evidence establishing that a material issue of

2 fact exists in relation to his Eighth Amendment claim. *Nissan*, 210 F.3d at 1102.

3      Here again, Matthews failed to present or offer any admissible evidence to the

4 Court to establish that a material issue of fact exists on this claim. Therefore, Reubart is

5 entitled to summary judgment on this additional basis.[6]

6 **V.   CONCLUSION**

7      For good cause appearing and for the reasons stated above, the Court

8 recommends that Reubart's motion for summary judgment, (ECF No. 12), be granted.

9      The parties are advised:

10      1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

11 Practice, the parties may file specific written objections to this Report and

12 Recommendation within fourteen days of receipt. These objections should be entitled

13 "Objections to Magistrate Judge's Report and Recommendation" and should be

14 accompanied by points and authorities for consideration by the District Court.

15      2.   This Report and Recommendation is not an appealable order and any

16 notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

17 District Court's judgment.

18 **VI.   RECOMMENDATION**

19      **IT IS THEREFORE RECOMMENDED** that Reubart's motion for summary

20 judgment, (ECF No. 12), be **GRANTED.**

21      **IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER**

22 **JUDGMENT** and **CLOSE THIS CASE**.

23      **DATED**:  September 29, 2021

24      _____

25      **UNITED STATES MAGISTRATE JUDGE**

26

27

28 [6]   The Court does not address Reubart's qualified immunity argument because the Court finds that Reubart's constitutional claim fails on the merits.

13